IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:25-CR-40016-001 |
| | § | |
| MARTY ALLEN LINVILLE | § | |

# DEFENDANT'S SENTENCING MEMORANDUM IN SUPPORT OF MOTION FOR DOWNWARD VARIANCE FROM THE UNITED STATES SENTENCING GUIDELINE RANGE AND RECOMMENDED SENTENCE

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant, MARTY ALLEN LINVILLE, by and through undersigned counsel, respectfully submits this Defendant's Sentencing Memorandum in Support of Motion for Downward Variance from the United States Sentencing Guideline Range and Recommended Sentence ("Sentencing Memorandum") to assist the Court in imposing a just and appropriate sentence that complies with the requirements of 18 U.S.C. § 3553, reflects the nature and seriousness of the offense, considers Defendant's individual history and characteristics, and serves the legitimate purposes of federal sentencing while avoiding unwarranted sentence disparities. Defendant confirms he received and reviewed the Presentence Investigation Report ("PSR") prepared by U.S. Probation Officer Specialist Cory Johnson and understands the Court will consider the PSR during sentencing. The PSR includes an *advisory* guideline sentencing range together with a recommended sentence; however, Defendant respectfully submits this Sentencing Memorandum to assist the Court in determining the most appropriate sentence in this matter.

A. <u>Introduction</u>

Defendant entered into a plea agreement on February 9, 2026, where he pled guilty to two counts of Willful Failure to Account for and Pay Over Trust Fund Taxes in violation of 26 U.S.C. § 7202. The applicable sentencing range under the United States Sentencing Guidelines is 30 to 37 months, as calculated in detail in Part D of the PSR. The information presented in this Sentencing Memorandum, however, (addressing Defendant's genuine remorse, limited prior criminal history, strong family support, stable employment, consistent work ethic, and relationships with customers imperative to preservation of the business required to fund restitution) demonstrates Defendant is a suitable candidate for a sentence that emphasizes rehabilitation, accountability, and successful payment of restitution.

B. <u>Title 18 U.S.C. § 3553(a) Analysis</u>

The PSR was ordered, prepared and filed for record herein. As this Court is keenly aware, the United States Sentencing Commission ("Commission") sets forth the following seven factors, all of which the Court must consider prior to imposing a sentence in this case:

(1) The nature and circumstances of the offense and the history and characteristics of the Defendant;

(2) The need for the sentence imposed to reflect the four primary purposes of sentencing, i.e. retribution, deterrence, incapacitation, and rehabilitation;

(3) The kinds of sentences available (e.g. whether probation is prohibited or whether a mandatory minimum term of imprisonment is required by statute);

(4) The sentencing range established through application of the sentencing guidelines and the types of sentences available under the guidelines;

(5) Any relevant policy statements promulgated by the Commission;

(6) The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

U.S. FED. SENT. COMM'N, FED. SENTENCING: THE BASICS, at 2, 12 (Aug. 2015) (citing 18 U.S.C. §3553(a)).

Analysis of these seven factors supports the sentence requested by Defendant herein below.

1. The Nature and Circumstances of the Offense and Characteristics of Defendant.

a) *The Nature and Circumstances of the Offense*

The very nature and circumstances of the nonviolent offense in which Defendant was involved, together with his personal characteristics support the request for downward variance from the *advisory* sentencing guideline range and recommended sentence. From the very outset of this case, Defendant has accepted responsibility for his misconduct. In furtherance of his acknowledged accountability for his misconduct, Defendant assisted and cooperated with prosecutorial and investigative authorities, delegating the responsibility for preparation of IRS Forms

941, "Employer's QUARTERLY Federal Tax Return," for all delinquent periods to retained legal counsel in recognition that the task to do this accurately and timely had admittedly overwhelmed him. His assistance and cooperation was substantial and material, truthful and trustworthy, throughout the entirety of this matter. Based on the foregoing considerations, it is clear that a prison sentence of any length is unnecessary to deter future criminal conduct by Defendant. Rather, a sentence that varies downward substantially from the recommended guideline sentencing range and the recommended sentence is appropriate and more than sufficient, but not greater than necessary, in this case.

b) *The Characteristics of Defendant*

Defendant Marty Allen Linville was born September 29, 1967, in DeQueen, Arkansas, and he has resided between DeQueen and Umpire, Arkansas, for the majority of his life developing deep roots in those communities. Since 2012, Defendant has resided consistently in DeQueen, where he lives near his son Dylan Linville and daughter Sydney Gilbert and sees his children and grandchildren daily. Defendant and his sister Jerrie Mitchell, who resides in Athens, Arkansas, are the primary caretakers for their mother Jackie Louise Linvile who lives in Umpire. Defendant is the sole owner and operator of Malco Inc., an Arkansas corporation which operates out of his home located on his son's property in DeQueen. The PSR accurately describes Defendant's family and community connections. Suffice it to say that Defendant, his children, his grandchildren, his

sister, and his mother are experiencing great stress, great pressure, and great fear as a result of this matter. Nevertheless, they remain supportive of each other, close to each other, and hopeful that the Court will grant a substantial downward variance from the recommended sentencing range, so as to sentence Defendant to a term of probation or house arrest rather than a prison term.

As the Court is aware, Defendant's age, supportive friends and immediate family, as well as extended family, clearly support the request for downward variance from the *advisory* sentencing guideline range and recommended sentence. Statistically speaking, Defendant is absolutely one of the least likely types of offenders to recidivate. According to research, "[r]ecidivism rates decline relatively consistently as age increases." U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES, at 12 (2004). "Generally, the younger the offender, the more likely the offender recidivates." *Id.* This is proven by the fact that "[a]mong all offenders under age 21, the recidivism rate is 35.5 percent, while offenders over age 50 have a recidivism rate of 9.5 percent." *Id.* As such, a prison sentence is neither warranted nor necessary to deter future criminal behavior by Defendant or other similarly situated offenders. Overall, Defendant is in good physical health and has no history of serious or chronic illnesses or medical conditions. He has never been diagnosed or treated for mental or emotional illnesses. Also, he has no history of substance abuse or excessive alcohol consumption.

In summary, Defendant's personal characteristics also support the request for a substantial downward variance from the *advisory* sentencing guideline range and recommended sentence. Such a sentence is reasonable, appropriate, more than sufficient, but not greater than necessary, to comply with the §3553(a) factors.

2. The Primary Purpose of Sentencing, the Types of Sentences Available, and the Need for Restitution to the Victim.

The next factors to be considered by the Court are the kinds/types of available sentences for Defendant's offense and then imposition of a sentence reflective of the primary purpose of the sentencing. *18 U.S.C. § §§3553 (a)(2)(3),(7).* The offense to which Defendant entered his guilty plea is a Class D Felony. As such, Defendant is eligible for not more than 3 years supervised release. Because the *advisory* sentencing guideline range (and recommended sentence) is in Zone D of the Sentencing Table, Defendant presently does not qualify for probation. It is important to note, and as this Court is also keenly aware, this recommended sentence and guideline range are not required by statute as a mandatory minimum prison term. To the contrary, the Court has great latitude and ultimate authority to consider all §3553(a) factors and then impose a *particularized*, reasonable, and just sentence in this *particular* case, involving this *particular* Defendant.

Defendant has absolutely no prior criminal history. He will suffer immense and intense punishment by this felony conviction. The retribution will include, not only a life stigmatized as a felon, but also loss of his 2nd Amendment rights to

possess/own guns; loss of the right as an American citizen to vote; loss of the sacred right to serve on a jury; and may very well suffer loss of certain business opportunities as a result of being a felon. Defendant will be branded with this felony for the rest of his life… and each and every one of these losses, each and every one of these consequences, serve not only as retribution but also as a deterrence to future misconduct by Defendant and others similarly situated to him. Moreover, not only will there be retribution and deterrence in a downward variance sentence, but there will also be incapacitation. The sentencing purpose of incapacitation includes not only consideration of incarceration (or death sentence in capital murder cases) but also, where reasonable and appropriate in a particular case, such as the instant case before the Court, securing our community/society from future misconduct of Defendant by placing him on probation, supervising him, restricting his freedom of movement, requiring him to comply with probation conditions that include, but are not limited to, reporting regularly to a supervising officer; submitting to random drug tests; participating in and successfully completing any classes deemed necessary for rehabilitative purposes as well as to promote and protect Defendant's mental and emotional health; continuing to work and obey all laws, as well as complying with all probation conditions, including payment of remaining restitution due and owing to the victim: The Internal Revenue Service.

As earlier noted, Defendant is the sole owner and operator of Malco Inc. ("Malco"), an Arkansas corporation primarily engaged in the poultry industry,

conducting transportation operations for businesses including Tyson Foods and Pilgrim's Pride. Defendant has fully disclosed his legal situation with these customers, and they remain willing to continue their business relationships for so long as he is directing and managing Malco's operations. Specifically, Tyson Foods has reported its intention to increase the volume of its business with Malco, along with a noteworthy increase in compensation, should Defendant be permitted to serve his sentence on probation or under house arrest and manage the additional workload. This prospect offers a solution which serves to hold Defendant accountable for his transgressions while allowing him to earn the income required to fulfill his restitution obligation. There is no one other than Defendant to run Malco and, if there were an alternative operator, Malco's customers have not committed to remain with the company should Defendant separate from it. Candidly, it is understood that Malco will cease all operations and the source of Defendant's restitution will be eliminated if Defendant loses the ability to run it.

Defendant is, quite simply, embarrassed and humiliated by his misconduct. He recognizes that the consequences brought about by his choices and conduct affect not only him, but his children, his grandchildren, his mother, his sister, and his friends and supporters. He has many, many people who are supportive of him and his request for a just, appropriate, and reasonable sentence that varies downward from the recommended guideline sentencing range and recommended

sentence. Specifically, a sentence that is sufficient, but not greater than necessary, to comply with all of the factors set forth in §3553(a).

3. The U.S. Sentencing Guidelines and Unwarranted Sentencing Disparities.

The Court must next consider the United States Sentencing Guidelines ("Guidelines") and avoid unwarranted sentencing disparities. *18 U.S.C.§§3553(a)(4), (6).* Since *United States v. Booker*, 543 U.S. 220 (2005), the rate at which courts have imposed sentences within the range suggested by the Guidelines has decreased. U.S. FED. SENT. COMM'N, FED. SENTENCING: THE BASICS, at 3. In fact, throughout the most recent years, "within-range" sentences have only been imposed in about fifty percent of cases, and of the cases with below-range sentences, over forty percent of them were based on grounds for downward variance/departure. *Id.* at 3, 7. In fact, both government-sponsored and nongovernment-sponsored below-range sentences have increased. *Id.*

As reported herein above, the type of sentence available for the nonviolent offense committed by Defendant, who is a first offender with no prior criminal history whatsoever, neither prohibits probation or house arrest nor requires by statute a mandatory minimum term of imprisonment. In this particular case, this particular Defendant's request for a downward variance from the *advisory* Guidelines sentencing range and recommended sentence is, indeed, reasonable and appropriate, is clearly within the Court's sound discretion and ultimate authority, and is absolutely justified based upon the nature of Defendant's offense, his overall

history and circumstances, and otherwise satisfying the mandates of §3553(a). Furthermore, such a downward variance sentence as requested herein by Defendant is necessary to avoid unwarranted sentencing disparities. Were Defendant to be incarcerated, his ability to make restitution to the victim is not simply impaired. It is destroyed. Malco's customer base will defect, and there will be no business to which Defendant can return upon his release. Defendant is cognizant of the reality that every case is different, the facts of each case are distinct, and the defendant involved in each case is also different and distinct. Respectfully, Defendant requests the Court impose a downward variance sentence with a term of probation or house arrest rather than a prison term. Such a sentence would, indeed, be more than sufficient, but not greater than necessary, in light of this particular Defendant, with these particular facts and circumstances, in this particular case.

4. Relevant Policy Statements from the U.S. Sentencing Commission.

The last factor a sentencing court must consider is relevant policy statements from the Commission. *18 U.S.C.§3553(a)(5)*. One important policy consideration to take into account in Defendant's case is the Commission's goal of "minimiz[ing] the likelihood that the Federal prison population will exceed the capacity of the Federal prisons." U.S. SENTENCING COMM'N, AMENDMENT TO THE SENTENCING GUIDELINES, at 1 (July 18, 2014) (*citing* 28 U.S.C. § 994(g)). Of course, such policy must be

balanced with the need for safety to the public. *Id.* Since Defendant has no prior criminal record and poses no danger to the public, this Court may, and should, grant Defendant's request for downward variance from the *advisory* sentencing guideline range and recommended sentence in order to maintain prison space for more serious and dangerous offenders as suggested herein above.

C. Conclusion

When considering the totality of the § 3553(a) factors together with Defendant's substantial cooperation and assistance with federal government authorities, it is indisputable that Defendant's request for a downward variance from the *advisory* sentencing guideline range and recommended sentence is clearly within this Court's authority and discretion. Moreover, Defendant pleads with this Court to grant his request because such a downward variance sentence is just and reasonable, fair and appropriate, based upon careful consideration of each of the factors set forth in 18 U.S.C.§3553(a). Probation and/or house arrest will achieve the goals of incapacitation, deterrence, and rehabilitation, while permitting Defendant to fulfill the goal of restitution.

As this Court is keenly aware, its sentencing obligation since the decisions in *Booker* and *Gall v. United States*, 552 U.S. 38 (2007), and their progeny is to impose "a sentence sufficient, but not greater than necessary" to comply with all of the

factors set forth in § 3553(a). A fair and full analysis of the § 3553(a) factors absolutely confers upon the Court the authority to exercise great latitude and sound discretion to vary downward from the imprisonment recommended by the *advisory* guideline range. This is particularly true where, such as in the instant case, the recommended guideline sentence for Defendant is clearly excessive, absolutely inappropriate, and fails to consider the § 3553(a) factors, as well as Defendant's substantial cooperation with, and assistance to, government authorities. Having accepted responsibility and assumed accountability for his misconduct herein, Defendant is respectfully requesting the Court to exercise its great and sound latitude in this case by imposing a sentence that includes the combination of conditions that will, indeed, be reflective of a reasonable and just sentence in this particular case. Such a sentence will certainly provide just punishment for the crime committed by Defendant, but will also give due consideration to Defendant's lack of any criminal history, Defendant's substantial assistance to and cooperation with government authorities, and his sincere acceptance of responsibility–not the least of which is his commitment to increase the business of Malco for the expressed purpose of fulfilling his debt of restitution. Moreover, such a sentence will protect the public by serving as a deterrent to others for criminal conduct of this nature and avoid unwarranted sentencing disparities, while affording Defendant with the opportunity to continue on a redemptive path of being a productive, law-abiding

citizen, father, grandfather, brother and son at the conclusion of this case. *United States v. Collington,* 461 F.3d 805 (6th Cir. 2006), and *United States v. McGhee,* 512 F.3d 1050 (8th Cir. 2008).

Respectfully submitted,

NORTON + WOOD
315 Main Street
Texarkana, Texas 75501
T: (903) 823-1321
F: (903) 823-1325

By: /s/ Fred R. Norton, Jr.
Fred R. Norton, Jr.
Texas Bar No. 15104500
Arkansas Bar No. 2014118
fred@nortonandwood.com

Attorneys for Defendant,
Marty Allen Linville

CERTIFICATE OF SERVICE

I, Fred R. Norton, Jr., hereby certify that on May 26, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing and that a copy of the foregoing was also sent via email to the following:

Carly Marshall
Attorney for the Western District of Arkansas
Carly.Marshall@usdog.gov

Cory Johnson
U.S. Probation Officer
Cory_Johnson@arwp.uscourt.gov

/s/ Fred R. Norton, Jr.
Fred R. Norton